Fletcher, J.
[After stating the facts, the instructions requested, and the instructions given.] As the ruling of the judge, that the defendant, as a carrier, had a lien for his freight, was placed upon grounds wholly independent of any rightful authority in the agents of the Old Clinton line and the Albany and Canal line, to divert the goods from the course in which the plaintiff had directed them to be sent, and to forward them by the defendant’s vessel, and wholly independent of the plaintiff’s consent, express or implied, the simple question raised in the case is, whether if a common-carrier honestly and fairly on his part, without any knowledge or suspicion of any wrong, receives goods from a wrongdoer, without the consent of the owner, express or implied, he may detain them against the true owner, until his freight or hire for carriage is paid; or to state the question in other words, whether if goods are stolen and delivered to a common-carrier, who receives them honestly and fairly in entire ignorance of the theft, he can detain them against the true owner, until the carriage is paid.
It is certainly remarkable, that there is so little to be found in the books of the law, upon a question which would seem likely to be constantly occurring in the ancient and extensive business of the carrier. In the case of York v. Grenaugh, 2 Ld. Ray. 866, the decision was, that if a horse is put at the stable of an inn by a guest, the innkeeper has a lien on the animal for his keep, whether the animal is the property of the guest or of some third party from whom it has been fraudulently taken or stolen. In that case, lord chief justice Holt cited the case of an Exeter common-carrier, where one stole goods and delivered them to the Exeter carrier, to be carried to Exeter; the right owner, finding the goods in possession of the carrier, demanded them of him; upon which the carrier refused to deliver them unless he was first paid for the carriage. The owner brought trover, and it was held, that the carrier might justify detaining the goods against the right owner for the carriage ; for when they were brought to him, *143 he was obliged to receive them, and carry them, and therefore since the law compelled him to carry them, it will give him a remedy for the premium due for the carnage. Powell, J., denied the authority of the case of the Exeter earner, but concurred in the decision as to the innkeeper. There is no other report of the case of the Exeter carrier to be found. Upon the authority of this statement of the case of the Exeter carrier, the law is laid down in some of the elementary treatises to be, that a carrier, who receives goods from a wrongdoer or thief, may detain them against the true owner until the carriage is paid.
In the case of King v. Richards, 6 Wharf. 418, the court, In giving an opinion upon another and entirely different and distinct point, incidentally recognized the doctrine of the case of the Exeter carrier. But until within six or seven years there was no direct adjudication upon this question except that re ferred to in York v. Grenough of the Exeter carrier. In 1843, there was a direct adjudication, upon the question now under consideration, in the supreme, court of Michigan, in the case of Fitch v. Newberry, 1 Doug. 1. The circumstances of that case were very similar to those in the present case. There the goods were diverted from the course authorized by the owner, and came to the hands of the carrier without the consent of the owner, express or implied; the carrier however was wholly ignorant of that, and supposed they were rightfully delivered to him; and he claimed the right to detain them until paid for the carriage. The owner refused to pay the freight, and brought an action of replevin for the goods. The decision was against the earner. The general principle settled was, that if a common-carrier obtain possession of goods wrongfully or without the consent of the owner, express or implied, and on demand refuse to deliver them to the owner, such owner may bring replevin for the goods or trover for their value. The case appears to have been very fully considered and the decision is supported by strong reasoning and a very elaborate examination of authorities. A very obvious distinction was supposed to exist between the cases of carriers and innkeepers, though the distinction did not affect the determination of the case.
*144 This decision is supported by the case of Buskirk v. Purin, 2 Hall, 561. There property was sold on a condition, which the buyer failed to comply with, and shipped the goods on board the defendant’s vessel. On the defendant’s refusal to deliver the goods to the owner, he brought trover and was allowed to recover the value, although the defendants insisted on their right of lien for the freight.
Thus the case stands upon direct and express authorities. How does it stand upon general principles ? In the case of Saltus v. Everett, 20 Wend. 267, 275, it is said: “ The universal and fundamental principle of our law of personal property is, that no man can be divested of his property without his consent, and consequently that even the honest purchaser under a defective title cannot hold against the true proprietor.” There is no case to be found, or any reason or analogy anywhere suggested, in the books, which would go to show that the real owner was concluded by a bill of lading not given by himself but by some third person, erroneously or fraudulently. If the owner loses his property, or is robbed of it, or it is sold or pledged without his consent, by one who has only a temporary right to its use by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be done upon it, the owner can follow and reclaim it in the possession of any person, however innocent.
Upon this settled and universal principle, that no man’s property can be taken from him without his consent, express or implied, the books are full of cases, many of them hard and 'distressing cases, where honest and innocent persons have purchased goods of others apparently the owners, and often with strong evidence of ownership, but who yet were not the owners, and the purchasers have been obliged to surrender the goods to the true owners, though wholly without remedy for the money paid. There are other hard and distressing cases of advances made honestly and fairly by auctioneers and commission merchants, upon a pledge of goods by persons apparently having the right to pledge, but who in fact had not any such right, and the pledgees have been subjected to the loss of them by the claim of the rightful owner. These *145 are hazards to which persons in business are continually exposed by the operation of this universal principle, that a man’s property cannot be taken from him, without his consent. Why should the carrier be exempt from the operation of this universal principle ? Why should not the principle of caveat emptor apply to him ? The reason, and the only reason, given is, that he is obliged to receive goods to carry, and should therefore have a right to detain the goods for his pay. But he is not bound to receive goods from a wrongdoer. He is bound only to receive goods from one who may rightfully deliver them to him, and he can look to the title, as well as persons in other pursuits and situations in life. Nor is a carrier bound to receive goods, unless the height or pay for the carriage is first paid to him; and he may in all cases secure the payment of the carriage in advance. In the case of King v. Richards, 6 Whart. 418, it was decided that a carrier may defend himself from a claim for goods by the person who delivered them to him, on the ground that the bailor was not the true owner, and therefore not entitled to the goods.
The common-carrier is responsible for the wrong delivery of goods, though innocently done, upon a forged order. Why should not his obligation to receive goods exempt him from the necessity of determining the right of the person to whom he delivers the goods, as well as from the necessity of determining the right of the person from whom he receives goods ? Upon the whole, the court are satisfied, that upon the adjudged cases, as well as on general principles, the ruling in this case cannot be sustained, and that if a carrier receives goods, though innocently, from a wrongdoer, without the consent of the owner, express or implied, he cannot detain them against the true owner, until the freight or carriage is paid.